Filed 12/12/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE C.H., a Person Coming Under the Juvenile Court Law. _____ | ) ) ) ) | |
| THE PEOPLE, | ) ) | S183737 |
|      Plaintiff and Respondent, | ) ) | |
|      v. | ) ) | Ct.App. 2/6 |
| C.H., | ) ) | B214707 |
|      Defendant and Appellant. _____ | ) ) ) ) | Ventura County Super. Ct. No. 2005040811 |

May a court commit to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF), a juvenile who has not committed an offense described in subdivision (b) of Welfare and Institutions Code section 707? Two statutes govern the answer. Welfare and Institutions Code section 731 authorizes a juvenile court to commit a juvenile who has been adjudged a ward of the court to the DJF if the ward has committed an offense described in subdivision (b) of Welfare and Institutions Code Section 707 "and" the ward "is not otherwise ineligible for commitment to the division under [Welfare and Institutions Code] Section 733." (Welf. & Inst. Code, § 731, subd. (a)(4) (hereafter section 731(a)(4)).)[1] Section 733 makes a ward ineligible for commitment to the

_____

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

DJF when "*the most recent offense* alleged in any petition and admitted or found to be true by the court is *not* described in subdivision (b) of Section 707, *unless the offense is a sex offense* set forth in subdivision (c) of Section 290.008 of the Penal Code." (§ 733, subd. (c) (hereafter section 733(c), italics added.)

Here, the juvenile court committed a juvenile ward, C.H., to the DJF based on his commission of a sex offense listed in Penal Code section 290.008, subdivision (c) (hereafter Penal Code section 290.008(c)), although he had never committed an offense listed in section 707, subdivision (b) (hereafter § 707(b)). We conclude a juvenile court lacks authority to commit a ward to the DJF under section 731(a)(4) if that ward has never been adjudged to have committed an offense described in section 707(b), even if his or her most recent offense alleged in a petition and admitted or found true by the juvenile court is a sex offense set forth in section 290.008(c) as referenced in section 733(c). We reverse the judgment of the Court of Appeal, which concluded otherwise.[2]

## I.

### Factual and Procedural Background

In October 2005, a witness reported seeing 13-year-old C.H. orally copulating his three-year-old sister S.H. while they were parked in a vehicle outside a grocery store. C.H. admitted his conduct to an investigating officer and

---

[2] Given our conclusion that C.H. was not eligible for commitment to the DJF, we do not reach the other issues presented in this case, which include whether it was error to commit C.H. to the DJF without evidence demonstrating probable benefit to him from his commitment and/or without adequately considering alternative placements. The request for judicial notice filed by amicus curiae Pacific Juvenile Defender Center and Loyola Law School Center for Juvenile Law and Policy is denied as unnecessary.

told the officer he was in counseling for molesting S.H. a year earlier. C.H. also told the officer he had touched the genitalia of two of his other siblings.

An original petition was filed in juvenile court pursuant to section 602, alleging C.H. had committed a lewd and lascivious act upon S.H. within the meaning of Penal Code section 288, subdivision (a). C.H. admitted the allegation and was declared a ward of the court and placed on probation in January 2006.

Over the course of the next three years, C.H. made little to no progress on probation. He admitted four separate violations of probation for failing to comply with program placement rules.

The first notice of violation of probation was filed, alleging C.H. had failed to comply with program placement rules by failing to obey staff directives, complete required assignments and participate actively in group therapy. C.H. admitted the violations and the court ordered him placed at a new residential program.

C.H. demonstrated the same lack of commitment and progress at his second program placement. In addition, he disclosed having gender identity issues and admitted engaging in mutually consenting sex acts on two occasions with another resident. After three months at this second placement, a second notice of violation of probation was filed, alleging a failure to comply with program placement rules. C.H. admitted the violations and in June 2007 he was placed at a residential program that offered services directed to his gender identity issues.

Approximately 10 months later, after C.H. failed to complete required assignments for his sex offender therapy and routinely pretended not to understand what he was being told in order to avoid doing work, a third notice of violation of probation was filed, alleging C.H.'s continuing failure to comply with program rules and lack of progress. C.H. admitted the violations and ultimately served 90 days in custody at juvenile hall.

3

C.H. returned from custody to the residential program in September 2008 with a negative and defiant attitude.  His continued failure to complete assignments, failing school grades, and lack of progress in his sex offender treatment program resulted in a fourth notice of violation of probation filed in January 2009.  C.H. again admitted the violations.

In February 2009, after an extensive disposition hearing, the juvenile court committed C.H. to the DJF in order to enable him to participate in its sex offender program.  The court observed that C.H.'s commitment offense, the violation of Penal Code section 288, subdivision (a), was not an offense falling within the provisions of section 707(b),[3] but concluded that after three years of failed attempts to help C.H. in three different reputable programs, commitment of C.H. to the DJF was necessary so that he would not have access to other potential victims and could receive the benefit of the DJF's adolescent sexual offender program.  C.H. appealed the dispositional order.

The Court of Appeal affirmed.  As relevant here, it rejected C.H.'s claim that he was ineligible for commitment to the DJF because his offense under Penal Code section  288, subdivision (a) was not listed in section 707(b).  We granted C.H.'s petition for review.

---

[3]     Section 707(b) does not list the offense of a lewd and lascivious act on a child within the meaning of subdivision (a) of Penal Code section 288, the offense with which C.H. was charged and that he admitted committing.  Section 707(b) lists 30 serious or violent felonies, including the sex offenses of rape with force, violence or threat of great bodily harm, sodomy by force, violence, duress, menace or threat of great bodily harm, oral copulation by force, violence, duress, menace or threat of great bodily harm, forcible penetration with a foreign object as specified in subdivision (a) of Penal Code section 289, and a *forcible* lewd or lascivious act on a child described by subdivision (b) of Penal Code section 288. (§ 707, subd. (b)(4)-(8).)

4

## II.

### Discussion

#### A.  *The Plain Meaning of Sections 731(a)(4) and 733(c)*

Section 731, subdivision (a) authorizes a juvenile court to order specified types of treatment for a minor who is adjudged a ward of the court on the ground that he or she is a person described by section 602.  It also authorizes certain additional orders and commitments.  At issue here is subdivision (a)(4), which authorizes a juvenile court to "[c]ommit the ward to the [DJF], if the ward has committed an offense described in subdivision (b) of Section 707 and is not otherwise ineligible for commitment to the division under Section 733."

Section 733 provides, in relevant part, that "[a] ward of the juvenile court who meets any condition described below shall not be committed to the [DJF]: [¶]  (a) The ward is under 11 years of age.  [¶]  (b) The ward is suffering from any contagious, infectious, or other disease that would probably endanger the lives or health of the other inmates of any facility.  [¶]  (c) The ward has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707, unless the offense is a sex offense set forth in subdivision (c) of Section 290.008 of the Penal Code."  It is this last restriction, section 733(c), which gives rise to the question presented in this case.

"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)  We begin by examining the statutory language because the words of a statute are generally the most reliable indicator of legislative intent.  (*People v. Watson* (2007) 42 Cal.4th 822, 828; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.)  We give the words of the statute their

5

ordinary and usual meaning and view them in their statutory context.  (*People v. Watson, supra*, at p. 828.)  We harmonize the various parts of the enactment by considering them in the context of the statutory framework as a whole.  (*People v. Cole* (2006) 38 Cal.4th 964, 975; *Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487.)  "If the statute's text evinces an unmistakable plain meaning, we need go no further."  (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 508.)  "Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation."  (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103; accord, *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147.)

It is clear from the statutory language of sections 731(a)(4) and 733(c) that section 731(a)(4) governs a ward's eligibility for DJF commitment and section 733 governs a ward's ineligibility for a DJF commitment.  Subdivision (a)(4) was added to section 731 by urgency legislation passed in 2007.  (See Stats. 2007, ch. 175 (Sen. Bill No. 81), §§ 19, 37, operative Sept. 1, 2007.)  Initially, subdivision (a)(4) of section 731 simply authorized a juvenile court to "commit the ward to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities, if the ward has committed an offense described in subdivision (b) of Section 707."  The same bill that amended section 731 to include subdivision (a)(4) also added section 733.  (See Stats. 2007, ch. 175, §§ 22, 37, operative Sept. 1, 2007.)  Section 733(c) provided that a ward of the juvenile court shall *not* be committed to the DJF if, among other things, "the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707, unless the offense is a sex

6

offense set forth in paragraph (3) of subdivision (d) of section 290 of the Penal Code."**4** Thus, from the time of enactment, section 731(a)(4) stated a ward's eligibility for DJF commitment and section 733 stated a ward's ineligibility. This distinction was made express by the Legislature when only a few weeks after its enactment of new subdivision (a)(4) of section 731 and section 733 the Legislature amended section 731(a)(4) to clarify that a juvenile court has authority to commit a ward to the DJF "if the ward has committed an offense described in subdivision (b) of Section 707 *and is not otherwise ineligible for commitment to the division under Section 733.*" (Stats. 2007, ch. 257 (Assem. Bill No. 191), § 2, eff. Sept. 29, 2007, italics added.) This later version of section 731(a)(4) was in effect at the time C.H. was committed to the DJF.

As noted, section 731(a)(4) authorizes DJF commitment "if the ward has committed an offense described in subdivision (b) of Section 707 *and* is not otherwise ineligible for commitment to the division under Section 733." (Italics added.) The ordinary and usual usage of "and" is as a conjunctive, meaning "an additional thing," "also" or "plus." (*Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1551-1552; accord, *Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 861-862; *Santos v. Dondero* (1936) 11 Cal.App.2d 720, 723.)

---

**4** The Legislature subsequently reorganized and renumbered the provisions of Penal Code former section 290. (Stats. 2007, ch. 579, §§ 8-31, 52, eff. Oct. 13, 2007.) The sex offenses listed in paragraph 3 of subdivision (d) of former Penal Code section 290 were moved into subdivision (c) of new Penal Code section 290.008. (Stats. 2007, ch. 579, § 16.) Thereafter, section 733(c) and related statutes were amended to reference Penal Code section 290.008(c) instead of Penal Code former section 290, subdivision (d)(3). (See Stats. 2008, ch. 699, §§ 27-31.) At the time of C.H.'s commitment to the DJF, section 733(c) referenced Penal Code section 290.008(c) and for clarity, we will generally reference that statute.

In order for a ward to be committed to the DJF, section 731(a)(4) read as a conjunctive, requires that the ward has committed an offense listed in section 707(b), plus the ward is not ineligible under section 733. Both are necessary predicates. A ward's commission of an offense described in section 707(b) is, therefore, a prerequisite for a juvenile court's authority to order DJF commitment. Only if the juvenile ward is eligible for commitment to the DJF because of his or her commission of an offense listed in section 707(b) should the juvenile court proceed to consider whether he or she is nevertheless statutorily ineligible for such a commitment pursuant to section 733, including section 733(c).

Under section 733(c), a ward who has committed an offense described in section 707(b) is ineligible for commitment to the DJF if his or her "*most recent offense* alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707, unless *the offense* is a sex offense set forth in subdivision (c) of Section 290.008 of the Penal Code." (§ 733(c), italics added.) The antecedent being referenced by *the offense* in this quoted language is the ward's *most recent offense*. Thus, the statutory language of section 733(c) provides that a ward is ineligible for commitment to the DJF if his or her *most recent offense* admitted or found true by the court is not an offense described in section 707(b), unless the ward has a previously sustained petition for a section 707(b) offense and *the most recent offense* is one of the sex offenses set forth in section 290.008(c). The express exception for specified sex offenses in subdivision (c) of Penal Code section 290.008 is to the *in*eligibility to a DJF commitment as stated in the earlier clause of section 733(c). It is not a substitute for the initial, prerequisite eligibility requirement set forth in section 731(a)(4) that the ward have committed an offense described in section 707(b). Read together, sections 731(a)(4) and 733(c) limit the class of wards who may be committed to the DJF to those wards who (1) have committed an offense described in section

8

707(b) and (2) whose most recent offense alleged in any petition and admitted or found to be true by the court is listed either in section 707(b) or Penal Code section 290.008(c).

A contrary reading of section 733(c)'s description of those juvenile wards who are ineligible for commitment to the DJF would give the "and" used in section 731(a)(4) a disjunctive meaning. That is, one would need to interpret "and" as "or." It is true that courts will sometimes substitute "or" for "and," and vice versa, when necessary to accomplish the evident intent of the statute, but doing so is an exceptional rule of construction. (*Bianco v. Industrial Accident Com.* (1944) 24 Cal.2d 584, 587; *Santos v. Dondero, supra,* 11 Cal.App.2d at p. 723.) We reject application of the rule here because construing the word "and" in section 731(a)(4) as "or" would render a portion of section 733(c) superfluous. If "and" were construed to mean "or" in this context, section 731(a)(4) would provide that a ward is eligible for commitment to the DJF if he or she has committed an offense specified in section 707(b) *or* if he or she was eligible under section 733(c) because his or her most recent offense was one specified under section 707(b)[5] or because he or she committed one of the sex offenses enumerated in Penal Code section 290.008(c). But if the commission of any offense specified in section 707(b) qualifies a juvenile ward for commitment to the DJF, it would be meaningless to say that the ward is also eligible if his or her most recent offense is listed in section 707(b). It is a settled principle of statutory

[5] Under traditional principles of grammar, a double negative combines to form an affirmative. (American Heritage Dict. (4th ed. 2000) double negative, p. 539, col. 1.) Thus, to say a ward shall *not* be committed to the DJF if his or her most recent offense is *not* a section 707(b) offense is generally understood to mean a ward may be committed to the DJF if his or her most recent offense *is* a section 707(b) offense.

9

construction, that courts should "strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous." (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80; accord, *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.) We harmonize statutory provisions, if possible, giving each provision full effect. (*Cacho v. Boudreau* (2007) 40 Cal.4th 341, 352.)

Interpreting the word "and" in section 731(a)(4) as a conjunctive not only avoids rendering a portion of section 733(c) meaningless, it harmonizes the provisions of the statutes as a whole, and preserves section 731(a)(4) as the eligibility statute and section 733(c) as the ineligibility statute in accordance with the Legislature's apparent intent. It ascribes to the language of the statutes their ordinary and usual meaning.

### B. The Effect of Other Statutes Added or Amended at the Same Time as Sections 731(a)(4) and 733(c)

The Attorney General contends that statutes added or amended concurrently with sections 731(a)(4) and 733(c) reflect the Legislature's intent that juvenile sex offenders remain eligible for DJF commitment. We agree that certain juvenile sex offenders are eligible for DJF, but only so long as they have a prior or current section 707(b) offense sustained against them.

We begin by considering section 731.1, which was added, along with sections 731(a)(4) and 733(c), by Senate Bill No. 81. (Stats. 2007, ch. 175, §§ 20, 37.) Section 731.1 governs a juvenile court's authority to recall the commitment of a ward to the DJF. Section 731.1 provides that the court committing a ward to the DJF "may recall that commitment in the case of any ward whose commitment offense was not an offense listed in subdivision (b) of Section 707, unless the offense was a sex offense set forth in subdivision (c) of Section 290.008 of the

10

Penal Code, and who remains confined in an institution operated by the division on or after September 1, 2007." (§ 731.1, subd. (a).)

By its terms, section 731.1 governs recall of previous commitments of wards to the DJF, not eligibility for commitments starting on September 1, 2007. (See *In re Carl N.* (2008) 160 Cal.App.4th 423, 437-438.) That the Legislature concluded juvenile sex offenders already committed to the DJF should not receive the benefits of a recall under newly enacted section 731.1 sheds no light on what the Legislature intended regarding future commitment of juvenile offenders pursuant to sections 731(a)(4) and 733(c). As observed in *In re N.D.* (2008) 167 Cal.App.4th 885, 891-892, the Legislature undertook a fiscal realignment through Senate Bill No. 81 that shifted responsibility to the counties for all but the most serious youth offenders. When considering such fiscal matters, the Legislature could reasonably make different policy choices regarding which juvenile offenders should be kept in the custody of the DJF and which juvenile offenders should be committed in the future to the DJF.

We next consider section 1731.5, which was amended by Senate Bill No. 81 to read, in relevant part, as follows: "(a) After certification to the Governor as provided in this article, a court may commit to the [DJF] any person who meets all of the following: [¶] (1) Is convicted of an offense described in subdivision (b) of Section 707 *or paragraph (3) of subdivision (d) of Section 290 of the Penal Code.* [¶] (2) Is found to be less than 21 years of age at the time of apprehension. [¶] (3) Is not sentenced to death, imprisonment for life, with or without the possibility of parole, whether or not pursuant to Section 190 of the Penal Code, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment. [¶] (4) Is not granted probation, or was granted probation and that probation is revoked and terminated."

11

(Stats. 2007, ch. 175, §§ 24, 37, italics added.) After the Legislature reorganized and renumbered the provisions of Penal Code former section 290, the reference to Penal Code section 290, subdivision (b)(3) in section 1731.5 was correspondingly changed to Penal Code section 290.008(c). (Stats. 2008, ch. 699, § 29.)

Similar to section 731.1, section 1731.5 operates in a different context from the initial commitment of juvenile wards to the DJF by a juvenile court. Section 1731.5 is part of the statutory scheme applicable to individuals who are tried as adults in criminal proceedings. Specifically, section 1731, subdivision (a), states: "When *in any criminal proceeding* in a court of this State a person has been convicted of a public offense and the person was a minor when he or she committed the offense, the court shall determine whether the person was less than 21 years of age at the time of the apprehension from which the criminal proceeding resulted. *Proceedings in a juvenile court in respect to a juvenile are not criminal proceedings as that phrase is used in this chapter.*" (Italics added.) Section 1731.5, subdivision (a), affords the court in such criminal proceedings the authority to commit to the DJF an individual who is "convicted of an offense described in subdivision (b) of Section 707 or subdivision (c) of Section 290.008 of the Penal Code" (*id*., subd. (a)(1)),"found to be less than 21 years of age at the time of apprehension" (*id*., subd. (a)(2)), and meets certain sentence criteria. (*Id*., subd. (a)(3)-(4).)

Section 1731.5 provides a court in a criminal proceeding the discretion to commit an individual who was a juvenile at the time of apprehension to the DJF as a lesser alternative to state prison. The Legislature's choice to include offenses listed under both section 707(b) and Penal Code section 290.008(c) as qualifying offenses for this purpose does not shed any light on the Legislature's intent regarding the authority of a juvenile court to commit a juvenile ward to the DJF pursuant to sections 731(a)(4) and 733(c).

12

The Attorney General also cites Senate Bill No. 81's amendment of both section 736 (regarding the DJF's acceptance of a ward for commitment) and section 1766, former subdivision (a) (setting forth the Juvenile Parole Board's general authority), to include a reference to section 733. (Stats. 2007, ch. 175, §§ 23, 25.) These amendments make explicit within these statutes the restriction of the pool of wards eligible for commitment to the DJF set forth in section 733. These amendments do not suggest an intent by the Legislature that juveniles who commit sex offenses not described in section 707(b) and who have not been found to have committed a section 707(b) offense are eligible for commitment to the DJF.

As the Attorney General further notes, Senate Bill No. 81 also added a new subdivision (b) to section 1766 to direct the county of commitment, as opposed to the state, to supervise the parole of any ward released after September 1, 2007, if the ward was committed to the custody of the DJF for committing an offense *not* listed in section 707(b). (Stats. 2007, ch. 175, § 25.) This was part of the fiscal realignment of state and local responsibilities undertaken by Senate Bill No. 81. (*In re N.D., supra,* 167 Cal.App.4th at pp. 891-892.) In the clarifying urgency legislation passed shortly after the enactment of Senate Bill No. 81, former subdivision (b) of section 1766 was further amended to additionally exclude from local parole supervision any ward released on parole on or after September 1, 2007, if the ward committed an offense enumerated in Penal Code former section 290, subdivision (d)(3) (subsequently renumbered section 290.008(c)). (Stats. 2007, ch. 257 (Assem. Bill No. 191), § 5, eff. Sept. 29, 2007.) Such provisions now appear in subdivision (c) of section 1766.

Section 1766 sets forth the authority of the Juvenile Parole Board over wards committed to the DJF. (§ 1766, subd. (b) [former subd. (a)].) The section provides for local parole supervision of wards committed to the DJF for an offense

13

other than one listed in section 707(b) or a sex offense described in Penal Code section 290.008(c). (§ 1766, subd. (c) [former subd. (b)].) Section 1766 thus divides responsibility between the state and counties for parole supervision of wards who have already been committed to the DJF. As such, it is not an indication of the Legislature's intent regarding which wards are eligible for commitment in the future to the DJF.

Finally, we consider section 1767.35, which was also added by Senate Bill No. 81. As initially enacted, section 1767.35 provided for the return of a juvenile parolee whose parole was suspended, cancelled or revoked (1) to the custody of the DJF if the parolee was under the jurisdiction of the Division of Juvenile Parole Operations (Division) for the commission of an offense listed in section 707(b), but (2) to the local county of commitment if the parolee was under the jurisdiction of the Division based on the commission of an offense not described in section 707(b). (Stats. 2007, ch. 175, § 27.) The clarifying subsequent legislation amended section 1767.35 to authorize the return to the custody of the DJF of any parolee who was under the jurisdiction of the Division for the commission of an offense described in either section 707(b) or Penal Code section 290.008(c). (Stats. 2007, ch. 257, § 6.) Otherwise, the parolee is to be returned to the county of commitment. (§ 1767.35, subd. (c).)

Section 1767.35 expresses once again an apparent choice by the Legislature to treat those juvenile offenders who have already been committed to the DJF differently from wards whose initial eligibility for commitment is being considered. The Legislature's fiscal policy decision with respect to the return of juvenile parolees to the DJF or local counties does not reveal anything about the Legislature's intent regarding the authority of a juvenile court to commit a juvenile ward to the DJF pursuant to sections 731(a)(4) and 733(c).

14

We conclude none of these statutes support the Attorney General's position that the Legislature intended juveniles who commit sex offenses not described in section 707(b) to be eligible for commitment to the DJF. Indeed, the wording of these statutes suggests the contrary is true. Specifically, the language of sections 731.1, 1731.5, 1766, and 1767.35, demonstrates the Legislature knows how to specify that either an offense listed in section 707(b) or an offense listed in Penal Code section 290.008(c) makes a juvenile ward eligible for special treatment. It is reasonable, therefore, to conclude that if the Legislature had wanted to make both types of offenses a basis for initial commitment to the DJF, it would have said so in section 731(a)(4), the provision that sets forth a ward's eligibility. When the Legislature uses different words or phrasing in contemporaneously enacted statutory provisions, a strong inference arises that a different meaning was intended. (*People v. Albillar* (2010) 51 Cal.4th 47, 56.)

### C. Legislative History

The Attorney General contends the legislative history of section 731(a)(4) and section 733(c) demonstrates a clear intent to permit juvenile sex offenders to be committed to the DJF. However, only when a statute's language is ambiguous or susceptible of more than one reasonable interpretation may we turn to extrinsic aids to assist in interpretation. (*Murphy v. Kenneth Cole Productions, Inc, supra,* 40 Cal.4th at p. 1103; accord, *Olson v. Automobile Club of Southern California, supra,* 42 Cal.4th at p. 1147.) If the text reflects a plain meaning, we need go no further. (*Beal Bank, SSB v. Arter & Hadden, LLP, supra,* 42 Cal.4th at p. 507.)

Sections 731(a)(4) and 733(c) have a plain meaning, as we have discussed, and "judicial construction of unambiguous statutes is appropriate only when literal interpretation would yield absurd results." (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 583.) The literal interpretation of the statutes here does not yield absurd

15

results.  It simply reflects that the Legislature adopted a more nuanced approach than the Attorney General proposes to the issues of which juveniles may be sent to the DJF and which juveniles who previously have been committed to the DJF may be retained at or returned to the DJF or supervised at the state level.  The Legislature's choice to restrict the class of juvenile offenders eligible for commitment to the DJF serves to protect less serious youthful offenders (those who have not committed § 707(b) offenses) by ensuring they are not housed with and exposed to the more serious juvenile offenders committed to the DJF.  The Legislature's choice to treat differently those juvenile offenders who have previously been committed to the DJF recognizes that those offenders have already been exposed to the serious juvenile offenders who are in the custody of the DJF and further retention in or return to the custody of the DJF and/or supervision at the state level may be appropriate for them.

Certainly, as the statutes analyzed in part B, *ante*, indicate, the Legislature knew how to make a juvenile sex offense an alternative basis for the applicability of a statutory provision and chose to use different language in section 731(a)(4).  Under these circumstances, it is inappropriate to resort to the legislative history of sections 731(a)(4) and 733(c) to consider whether an otherwise undisclosed legislative intent might be reflected.  (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1264.)

### D.  Public Policy

As a final point, the Attorney General contends that public policy strongly supports the continued discretion of juvenile courts to commit sex offenders to the DJF, that is, that the sex offenses listed in both section 707(b) and Penal Code section 290.008(c) should be qualifying offenses for a commitment to the DJF.  The question before us, however, is one of statutory construction of two provisions

16

with a plain meaning — not one of policy choice. (*People v. Cole, supra,* 38 Cal.4th at p. 992; *California Teachers Assn. v. Governing Bd. Of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633; see *Bernard v. Foley* (2006) 39 Cal.4th 794, 813.) Our holding must be based on how sections 731(a)(4) and 733(c) are written, not on our view of what could or should have been enacted. (*Waste Management of the Desert v. Palm Springs Recycling Center, Inc.* (1994) 7 Cal.4th 478, 490.) Needless to say, the Legislature is free to reconsider the policy set out in the current statutes if it wishes to do so.

## III.

## Conclusion

We hold that sections 731(a)(4) and 733(c), read together, grant juvenile courts discretion to order a ward committed to the DJF only if the ward has committed an offense listed in section 707(b) and then only if the ward's most recent offense alleged in any petition and admitted or found to be true by the juvenile court is either an offense enumerated under section 707(b) or a sex offense described in Penal Code section 290.008(c). Because C.H. was never adjudicated to have committed an offense listed in section 707(b), the juvenile court had no authority under section 731(a)(4) to commit him to the DJF.

**Disposition**

The judgment of the Court of Appeal is reversed and the matter remanded to that court with instructions to reverse the dispositional order of the juvenile court committing C.H. to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

18

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re C.H.
_____

**Unpublished Opinion** XXX NP opn. filed 5/18/10 – 2d Dist., Div. 6
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**
_____

**Opinion No.** S183737
**Date Filed:** December 12, 2011
_____

**Court:** Superior
**County:** Ventura
**Judge:** Don Coleman
_____

**Counsel:**

Susan B. Gans-Smith, under appointment by the Supreme Court, for Defendant and Appellant.

Maureen Pacheco and Lisa M. Romo for Pacific Juvenile Defender Center and Loyola Law School Center for Juvenile Law and Policy as Amici Curiae on behalf of Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez, Michael J. Wise, Susan Sullivan Pithey and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Susan B. Gans-Smith
1130 East Clark Avenue, Suite 150
Santa Maria, CA  93455-5123
(805) 937-4649

Blythe J. Leszkay
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2274