Filed 6/3/13  In re Luis M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re LUIS M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　　v.<br><br>LUIS M.,<br><br>　　　Defendant and Appellant. | F065438<br><br>(Super. Ct. No. 08CEJ600958)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Rosendo Peña, Jr., Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*]　　Before Kane, Acting P.J., Detjen, J. and Franson, J.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Tiffany J. Gates, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant and minor, Luis M., appeals from a juvenile court order modifying the dispositional order in his Welfare and Institutions Code section 602 proceeding. (All further statutory references are to this code unless otherwise specified.) Minor contends the order directing that he be housed at the Division of Juvenile Facilities (DJF) pursuant to section 1752.16 was beyond the juvenile court's statutory power, deprived him of various constitutional rights, and included impermissible conditions of probation. We disagree and affirm.

## FACTS AND PROCEDURAL HISTORY

In 2008, when minor was 12 years old, he placed his finger in the anus of a six-year-old boy. He had also done so on prior occasions. After a section 602 petition was filed, minor admitted one count of violation of Penal Code section 288, subdivision (a), commission of a nonforceable lewd act on a child. Minor was adjudicated a ward of the juvenile court and placed in the custody and control of the probation officer. On May 11, 2011, after minor absconded from a group home and was a fugitive in Mexico for over a year, the juvenile court committed him to DJF for a maximum period of seven years. Minor appealed from that order.

In December 2011, while minor's appeal was pending, the Supreme Court held, in *In re C.H.* (2011) 53 Cal.4th 94, that a juvenile court may only commit a ward to DJF "if the ward … committed an offense listed in section 707[, subdivision] (b) and then only if the ward's most recent offense alleged in any petition and admitted or found to be true by the juvenile court [was] either an offense enumerated under section 707[, subdivision] (b)

2.

or a sex offense described in Penal Code section 290.008[, subdivision] (c)." (*Id.* at p. 108.)[1] This court subsequently reversed the juvenile court's order for minor's commitment and remanded the matter for further proceedings. (*In re Luis M.* (May 17, 2012, F062562) [nonpub. opn.].)

Prior to the case being heard again in the juvenile court, the Legislature enacted section 1752.16 as urgency legislation "to address the California Supreme Court's ruling in In re C.H. (2011) 53 Cal.4th 94." (*Id.*, subd. (b); see Stats. 2012, ch. 7, § 3.) Section 1752.16, subdivision (a), provided that DJF could contract with any county of this state to furnish housing to a ward who was in its custody on the date *In re C.H.* was decided and who was there for the commission of an offense listed in Penal Code section 290.008, subdivision (c),[2] but who had not been adjudged a ward for committing an offense described in subdivision (b) of section 707.

On remand, the juvenile court recalled the commitment to DJF in accordance with *In re C.H., supra,* and modified the dispositional order. The court continued minor as a ward, placed him in the care and custody of the probation officer, and directed that he be housed at DJF to complete the sex offender treatment program. The court ordered: "Upon completion of the [DJF] sex offender program, Probation is to bring the minor back for further hearing on his change of detention status at that point."

---

**1** As noted, minor admitted one count of violation of Penal Code section 288, subdivision (a). At the time of minor's offense, section 731, subdivision (a)(4) provided that a minor adjudged a ward pursuant to section 602 could be committed to DJF only if the minor had committed an offense described in section 707, subdivision (b). (See Stats. 2007, ch. 175, § 19.) While forcible lewd or lascivious conduct, described in Penal Code section 288, subdivision (b), is listed in section 707, subdivision (b), nonforcible lewd or lascivious conduct, proscribed by Penal Code section 288, subdivision (a), is not. (See *In re C.H., supra,* 53 Cal.4th at p. 99, fn. 3.)

**2** Conduct described in Penal Code section 288, subdivision (a), the section minor admitted, is listed in Penal Code section 290.008, subdivision (c).

# DISCUSSION

Minor contends the order for his participation in the DJF sexual offender treatment program is merely "an unauthorized DJF commitment with … a semantic twist," prohibited by *In re C.H., supra,* 53 Cal.4th 94. We disagree. There are consequential differences between a DJF commitment order and the order in this case. First, a ward committed to DJF for the commission of a sex crime listed in Penal Code section 290.008, subdivision (c), is required to register as a sex offender pursuant to Penal Code section 290, subdivision (b). (See *id.*, § 290.008, subd. (a).) There is no similar requirement for wards committed to juvenile hall for the same offense. (See *In re Crockett* (2008) 159 Cal.App.4th 751, 760; see also *In re Bernardino S.* (1992) 4 Cal.App.4th 613, 619-620 [discussing former Pen. Code, § 290, subd. (d)].) Second, when a ward is committed to DJF, the decision to release the ward from custody resides with the Juvenile Parole Board, not with the juvenile court. (§§ 1766, 1769; see *In re Allen N.* (2000) 84 Cal.App.4th 513, 515-516.) Third, a commitment to DJF does not necessarily end with the completion of the treatment program. Fourth, once released from DJF custody, a minor would be subject to juvenile parole. By contrast, in the case of a housing order like the one in this case, the requirement for completion of the sexual offender program is merely one condition of probation, with control of custody and probation remaining in the juvenile court. Completion of the treatment program results in the minor being returned to the juvenile court for local disposition of his case. The housing order is intended to provide beneficial therapy for minor; the order is not merely a semantically different authorization of the same punishment declared impermissible in *In re C.H.*

Minor contends the housing order is not a statutorily authorized disposition in a section 602 proceeding. Again, we disagree. The juvenile court had authority to direct

that the probation officer seek placement of minor in the DJF sexual offender program.[3] The juvenile court is authorized by existing law to utilize the new treatment resource created by section 1752.16. Section 202, subdivision (e)(4), authorizes the juvenile court to commit a ward to juvenile hall. As with all dispositional orders on section 602 petitions, wards "shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances." (§ 202, subd. (b).) "If a minor is adjudged a ward of the court on the ground that he or she is a person described by Section 601 or 602, the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor, including medical treatment …." (§ 727, subd. (a)(1).) Section 731, subdivision (a)(3), permits the juvenile court to order a ward to "participate in a program of professional counseling as arranged and directed by the probation officer as a condition of continued custody of the ward." The sexual offender program offered by DJF pursuant to section 1752.16 is merely another treatment alternative available to counties, and an order that a ward receive treatment through such a program is fully authorized by sections 202, 727, and 731.

Minor contends section 1752.16, subdivision (a), deprives him of constitutional equal protection because "similarly situated wards could be treated differently based simply on their county of confinement," depending on whether or not DJF entered into a housing contract with the particular county. Minor cites no legal authority on point, and

---

[3]     Minor contends there is no evidence that a contract exists between Fresno County and DJF for housing participants in the sexual offender program. While the existence of such a contract was implicitly assumed by all the participants in the lower court proceedings, if that assumption is erroneous, the matter can be addressed in further proceedings for modification of the terms of probation. The existence of the contractual relationship between the county and the state does not affect the authority of the juvenile court to impose sexual offender treatment as a condition of probation.

we are aware of no authority requiring uniformity of county rehabilitation resources. The juvenile court in each county considers all available resources in making the dispositional order in any particular case. (See, e.g., § 730, subd. (a).) A county with a local sexual offender program at its juvenile facility might be less likely to enter into a section 1752.16 contract with DJF, just as a juvenile court in such a county might exercise its discretion differently than would a juvenile court with no such local resource. Individual exercises of discretion by prosecutors and judges do not provide a basis for an equal protection challenge unless the discretion involves "invidious discrimination" or "vindictive or retaliatory" reasoning. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 569-571 [prosecutor's charging discretion under § 707, subd. (d)].) The Legislature's decision to provide an additional rehabilitation alternative to counties in need of such a program does not violate the equal protection rights of persons in the counties that accept such an offer.

Minor contends there is no statutory authority for placement of his custody under the dual control of DJF and the juvenile court, and that the order for such dual control is unconstitutionally vague because it does not allocate authority between the two entities. Minor asks, "Does [minor] have any remedy if DJF shifts the target and subjects all 'housed' wards to a new sex offender treatment program which they must start anew after already partially completing earlier programs?" Minor has not suggested any possible motivation DJF might have for such a waste of resources, and the juvenile court explicitly ordered that the current treatment program "is to continue so that you do not have to restart that upon your return to the DJF." More generally, it is clear that the statutory scheme retains in the juvenile court supervision and control over a ward. That supervision and control is not altered by the ward's participation in the DJF sexual offender program. Unquestionably, a ward placed in a group home, a residential treatment program, or juvenile hall (or an older ward housed in the county jail under § 208.5) is answerable on a daily basis to those who operate the program, but that does

6.

not change the ultimate responsibility of the juvenile court for the ward's supervision and control. (See § 727, subd. (a).) Similarly, when a ward is placed on probation and housed at DJF pursuant to section 1752.16, the juvenile court retains ultimate responsibility for supervision and control. The responsibility of a service provider, in this case DJF, for the day-to-day operation of the program for wards, with ultimate supervision and control in the juvenile court, is not unprecedented; it is, as stated, the same as a myriad of placements of wards under the Welfare and Institutions Code. The supervisory relationship is authorized by sections 727, subdivision (a) and 1752.16, and that relationship does not result in an unconstitutionally vague order.[4]

Minor contends section 1752.16 violates constitutional prohibitions on ex post facto laws (see U.S. Const., art. I, § 10; Cal. Const., art. I, § 9) because section 1752.16 permits the court to "impos[e] a greater restriction on his liberty than was available at the time the conduct occurred in 2009." This contention is without merit.

"[N]o statute falls within the ex post facto prohibition unless 'two critical elements' exist." (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 172.)[5] "First, the law must be retroactive." (*Ibid*.) Section 1752.16 is applicable to minor solely because

---

[4]     Minor's reliance on *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1399, footnote 8, and *In re Allen N., supra,* 84 Cal.App.4th 513, is misplaced. In those cases, the ward was committed to the Youth Authority, the predecessor of DJF. Then, as now, the state authorities determined when wards committed by the juvenile court would be released, and on what terms of parole. Accordingly, the juvenile court's attempt to impose postrelease terms of probation on a ward who had been committed to the Youth Authority was an impermissible intrusion into the statutory authority vested in the Youth Authority. In the present case, the lack of jurisdiction in DJF to impose postrelease conditions on minor is, as we have noted earlier, a key feature of the system established by section 1752.16; postrelease supervision of the ward continues to be vested in the juvenile court. The juvenile court retains jurisdiction to modify the treatment-program condition of probation and impose other reasonable conditions of probation.

[5]     The state and federal ex post facto laws have the same meaning. (*John L. v. Superior Court, supra,* 33 Cal.4th at pp. 171-172.)

he was, prior to the effective date of that section, the subject of a section 602 petition charging a crime listed in Penal Code section 290.008, subdivision (c), and was serving a commitment to DJF on the date *In re C.H., supra,* 53 Cal.4th 94 was decided. Accordingly, the first requirement for a prohibited ex post facto law has been met.

The second requirement for a prohibited ex post facto law is that the law must have one or more of the following four effects: to make criminal acts that were innocent when done; to make the crime greater or more aggravated than it was when committed; to inflict a greater punishment for the crime than was available when the crime was committed; or to alter the rules of evidence or the required proof for conviction. (*John L. v. Superior Court, supra,* 33 Cal.4th at p. 172 & fn. 3.) Minor contends section 1752.16 violates the third of these prohibitions; that is, he contends section 1752.16 increases the punishment that could have been imposed upon him at the time he committed his section 602 offense. To the contrary, both before and after the enactment of section 1752.16, a ward could be confined in a variety of juvenile institutions run by the county (§ 730, subd. (a)) and could be ordered to "participate in a program of professional counseling as arranged and directed by the probation officer as a condition of continued custody of the ward." (§ 731, subd. (a)(3).) The mere fact that the state created an additional resource to provide sexual offender treatment, and that this resource was in a different location than the existing local programs, does not constitute an increase in the punishment authorized for purposes of the ex post facto clauses. (See *People v. Cruz* (2012) 207 Cal.App.4th 664, 672, fn. 8 [serving sentence locally is not lesser punishment than serving same length sentence in state prison for ex post facto purposes].)

Minor also contends the juvenile court abused its discretion in requiring the DJF sexual offender treatment program as a condition of probation "without considering any alternatives." The record is to the contrary. The juvenile court stated that less restrictive alternatives "have previously been tried and failed." The probation officer reported that

if minor was released "into the community, he would be required to enroll and wait to begin a less restrictive treatment program," leaving the minor in danger of reoffending during the delay. In response, the court noted that minor's progress through the DJF sexual offender treatment program had been slow, even though he had been in the program for a significant time. Under these circumstances, the accuracy of which minor does not contest, the juvenile court did not abuse its discretion by requiring minor to continue in the DJF treatment program.

Finally, minor contends the court failed to develop a case plan for minor's reunification with his family; minor contends a case plan is required by section 706.6. Section 706.6 is inapplicable; it applies only when a minor is placed in foster care. (See § 706.6, specifying contents of plan when required under § 706.5 [applicable when foster care is contemplated or ordered].) Here, the primary impediment to family reunification was minor's failure to complete the sexual offender treatment program. The juvenile court's amended dispositional order clearly addresses the need for minor to complete that program before other steps necessary to achieve reunification could be evaluated. The juvenile court directed that minor be returned to court after completion of the program "for further hearing on his change of detention status at that point."

## DISPOSITION

The dispositional order of July 11, 2012, is affirmed.