[No. B196011. Second Dist., Div. One. Mar. 7, 2008.]

In re BRANDON G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BRANDON G., Defendant and Appellant.

**COUNSEL**

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROTHSCHILD, J.**—Brandon G. appeals from the sustained petition finding that he came under the provisions of Welfare and Institutions Code section 602.[1] The court found that Brandon possessed a concealable firearm in violation of Penal Code section 12101, subdivision (a)(1), and possessed live ammunition in violation of subdivision (b)(1) of the same section. Brandon contends no substantial evidence supported the allegation that the shotgun shell taken from his sawed-off shotgun was "live." He also contends that based upon recent amendments to sections 731.1 and 733, his case should be remanded for new dispositional proceedings. We disagree with both contentions and affirm.

## BACKGROUND

On April 8, 2006, two police officers were patrolling Maywood in separate vehicles. One officer saw Brandon and another person standing in the street and decided to cite them as pedestrians improperly in a roadway in violation of Vehicle Code section 21950, subdivision (b). The officer drove to Brandon's location and stopped. Brandon started walking away quickly, looking back at the officer. The officer got out of his car to follow him. Brandon then reversed course, ran past where he had been standing, and kept running, ignoring the officer's command to stop. Brandon's companion also ran. The officer saw Brandon moving his hands in front of his body and saw what appeared to be the grip of a handgun. The officer ran after Brandon and the companion, drew his gun, and threatened to shoot. Brandon removed a sawed-off shotgun with a pistol grip from his waistband, tossed it at his fleeing companion, and yelled, "Take it." The companion did not catch the shotgun, which instead fell in the middle of the street. The officer's partner then stopped his car near Brandon, chased him, and tackled him. The first officer recovered the shotgun, opened it, and saw that it was loaded with a single shotgun shell. He removed the shell, locked both it and the shotgun separately in his car, and booked them both into evidence immediately after Brandon's arrest.

On April 12, 2006, the Los Angeles County District Attorney filed a section 602 petition alleging that Brandon, 16 years old, had violated Penal Code section 12101, subdivisions (a)(1) and (b)(1), by possessing a concealable firearm and by possessing live ammunition. On October 12, 2006, the court held a trial on the allegations of the petition. Regarding the live ammunition

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

charge (a misdemeanor), the officer who recovered the shotgun testified that the shotgun shell he placed in the evidence bag was a nine-pellet, 00-size shot shell, and he identified it in court. He stated, "I placed the shotgun and one live round into my vehicle and locked it." Asked, "The round was a live round?" the officer answered, "To the best of my knowledge[,] yes." The officer then testified that he had training and experience with handling and recognizing firearms and ammunition, live or otherwise, during his five years as a police officer. In response to the prosecutor's followup question, "With your training, background and experience was it your opinion that this ammunition was a live round?" the officer answered, "Yes." On cross-examination, Brandon's counsel asked whether the officer could tell whether a shot shell had pellets in it by "listening to it" and whether he had ever encountered misfires when ammunition failed to fire. The officer answered "Yes" to both questions. Defense counsel also asked, "You don't know whether or not the primer is active?" The officer answered, "There is no indentation."

The court found both counts in the petition to be true beyond a reasonable doubt. On December 7, 2006, in committing him to the maximum term of nine years three months with California's Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF), the court noted Brandon's record, including that the current offense was committed while Brandon was on probation for a vehicular manslaughter committed in 2003. The court imposed a $100 restitution fine and credited Brandon with 1,135 days in custody. Brandon timely appealed.

## DISCUSSION

### I. Substantial Evidence

Brandon contends that no substantial evidence supports the allegation that he possessed live ammunition. We disagree.

■ We apply the substantial evidence standard of review. (See *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371 [112 Cal.Rptr.2d 620].) Thus, we review the entire record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the alleged crimes beyond a reasonable doubt. (*Ibid.*) We presume in support of the judgment the existence of every fact the trier of fact reasonably could deduce from the evidence, and if the circumstances

reasonably justify the trier of fact's findings as to each element of the charged offense, we must affirm even if the circumstances and evidence would support a contrary finding. (See *People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].) A person may testify as an expert if he has special knowledge, skill, experience, education, or training sufficient to qualify him. (Evid. Code, § 720; *People v. Bolin* (1998) 18 Cal.4th 297, 321 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

 After establishing that he had training and experience in the handling and recognition of guns and ammunition, the officer stated his opinion that the shotgun shell he found in Brandon's shotgun was a live round. This opinion, which was not controverted by other evidence, constitutes substantial evidence to show that the shotgun shell was live ammunition. (See *In re Khamphouy S.* (1993) 12 Cal.App.4th 1130, 1135 [15 Cal.Rptr.2d 882].) The officer's earlier answer to the question whether it was live ammunition—"To the best of my knowledge[,] yes"—does not undercut his expert opinion as Brandon contends.

Brandon cites *In re Arcenio V.* (2006) 141 Cal.App.4th 613 [46 Cal.Rptr.3d 232], but that case is distinguishable. In *In re Arcenio V.*, "[t]here was no direct or opinion testimony that the rounds were live." (*Id.* at p. 616.) Here, the officer gave opinion testimony, which constituted direct testimony that the round was live.[2]

## II. Sections 731.1 and 733

Brandon contends recent changes to sections 731.1[3] and 733[4] require that his case be remanded for new dispositional proceedings. We disagree.

---

[2] In his briefs, Brandon invites us to follow Justice Work's dissenting opinion in *In re Khamphouy S.*, *supra*, 12 Cal.App.4th at pages 1136–1138, instead of the majority in that case. We decline his invitation.

[3] Section 731.1 provides, in pertinent part, "Notwithstanding any other law, the court committing a ward to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities, upon the recommendation of the chief probation officer of the county, may recall that commitment in the case of any ward whose commitment offense was not an offense listed in subdivision (b) of Section 707, unless the offense was a sex offense set forth in [Penal Code section 290, subdivision (d)(3)], and who remains confined in an institution operated by the division on or after September 1, 2007."

[4] Section 733 provides, in pertinent part, "A ward of the juvenile court who meets any condition described below shall not be committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities: [¶] . . . [¶] (c) The ward has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707, unless the offense is a sex offense set forth in [Penal Code section 290, subdivision (d)(3)]. This subdivision shall be effective on and after September 1, 2007."

Brandon notes that under revised section 733, subdivision (c), on or after September 1, 2007, a ward under section 602 no longer may be committed to DJF if his most recent offense is not described in section 707, subdivision (b), and is not a particular sex offense. He argues that even though the trial court committed him to DJF under section 602 before the effective date of section 733, the section should apply to him retroactively because "[i]n amending section 733, the Legislature clearly intended the statute to be retroactive. This is so since amended section 731.1 contains a recall provision for wards with non-707[, subdivision] (b) offenses who remain at a DJF institution on or after September [1, 2007]."

■ Neither the language of sections 733 and 731.1 nor the rules of statutory interpretation support this contention. " 'The Legislature may make a law retroactive in its effect, but only when the intention to do so clearly appears. [Citations.] " 'It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.' " [Citations.]' " (*Estate of Hilton* (1996) 44 Cal.App.4th 890, 907 [52 Cal.Rptr.2d 491], quoting *In re Cindy B.* (1987) 192 Cal.App.3d 771, 779 [237 Cal.Rptr. 677].) ■ Section 733, subdivision (c), shows no retroactive intent on its face; it states, "This subdivision shall be effective on and after September 1, 2007."

Indeed, contrary to Brandon's contention, section 731.1 supports the view that the Legislature did not intend that sections 733 and 731.1 be applied retroactively. "[T]he court committing a ward to [DJF], *upon the recommendation of the chief probation officer of the county, may* recall that commitment in the case of any ward . . . who remains confined in an institution operated by [DJF] on or after September 1, 2007." (Italics added.) The insertion of the term "may" shows that recall is at the court's discretion, not mandatory. Moreover, the court's discretion only is triggered by a recommendation for recall from the chief probation officer of the county. Brandon offers no evidence of any such recommendation in his case. Without this recommendation, he cannot have his commitment recalled pursuant to section 731.1.

## DISPOSITION

The disposition order is affirmed.

Mallano, Acting P. J., and Vogel, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 18, 2008, S162814. George, C. J., Werdegar, J., and Corrigan, J., did not participate therein.