Filed 1/16/14  In re Alexander L. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ALEXANDER L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ALEXANDER L.,<br><br>        Defendant and Appellant. | A138050<br><br>(Contra Costa County Super. Ct. No. J0602298) |

        This case, which is now before us for the third time, "dramatically illustrates how much can go wrong when a trial court takes actions which affect a cause while it is on appeal." (*People v. Malveaux* (1996) 50 Cal.App.4th 1425, 1429.)  Alexander L. (appellant) challenges a February 15, 2013 dispositional order directing that he be temporarily housed at the Department of Juvenile Facilities (DJF).  The juvenile court entered the order which is the subject of this appeal while appellant's appeal from a prior commitment order was still pending in this court.

        The settled rule is that the filing of a valid notice of appeal divests the trial court of subject matter jurisdiction over the judgment on appeal.  Although an exception to this rule permits a trial court to correct an unauthorized sentence despite the pendency of an appeal, we hold this exception does not apply in this case.  Consequently, the

1

February 15, 2013 dispositional order is void because it was entered by a court lacking subject matter jurisdiction.  Accordingly, we must reverse.

FACTUAL AND PROCEDURAL BACKGROUND

An understanding of the now-complex procedural history of this matter requires us to recapitulate the facts of our two prior opinions in this case—*In re Alexander L.* (June 14, 2012, A132219 [nonpub. opn.] (*Alexander L. I*) and *In re Alexander L.* (May 1, 2013, A135213 [nonpub. opn.] (*Alexander L. II*).[1]  We draw much of the following factual statement from our prior unpublished opinions in those cases.

*Original Offenses and Placements*

In December 2006, the six-year-old victim told his mother that, during the preceding month, appellant had sodomized and orally copulated him and forced him to orally copulate appellant.  In February 2007, pursuant to a negotiated disposition, appellant pled no contest to committing a lewd act on a child under age 14 (Pen. Code, § 288, subd. (a)) and sodomy of a person under age 18 (Pen. Code, § 286, subd. (b)(1).)[2] Two additional sex offense counts were dismissed.

On February 27, 2007, the court declared appellant a ward of the court (Welf. & Inst. Code, § 602)[3] and ordered him detained in juvenile hall pending placement in a court-approved home or institution.  The court imposed standard probation conditions, including that he "attend/participate" in individual counseling.  The court's oral statement of probation conditions included "Counseling as directed."

---

[1] Although they are unpublished, we may cite our prior opinions pursuant to California Rules of Court, rule 8.1115(b).  We also grant appellant's August 15, 2013 request to take judicial notice of our prior opinions in this matter, as well as of the briefs and record in the prior appeals.  (Evid. Code, § 452, subd. (d).)  We deny as moot appellant's request for judicial notice of an excerpt of the report of a special master in unrelated superior court litigation and of a document issued by the Department of Corrections and Rehabilitation.

[2]   Both of these offenses are listed in Penal Code section 290.008, subdivision (c) (Penal Code section 290.008(c)), but they are not listed in Welfare and Institutions Code section 707, subdivision (b) (section 707(b)).

[3] All further undesignated statutory references are to the Welfare and Institutions Code.

2

Appellant was placed at the Mathiot Group Home Program in Sacramento on May 2, 2007, and was terminated therefrom on July 12 based on repeated disruptive behavior. As a result, he was found to have violated his probation.

On August 10, 2007, appellant was placed at Children's Therapeutic Community in Riverside. He was removed from that program on September 25, 2008. A notice of probation violation was filed alleging that appellant was "displaying inappropriate sex acts with group home peers." That notice of probation violation was later dismissed.

On November 21, 2008, appellant was placed at Breaking the Cycle Residential Treatment Center (BTC) in Sacramento. The probation department's January 13, 2009 placement review report's "assessment" section stated, "Minor needs to complete a juvenile sex offender treatment program prior to returning home."

*The Notice of Probation Violation*

On April 19, 2010, the probation department filed a notice of probation violation (Welf. & Inst. Code, § 777) which alleged the following: "On April 12, 2010, [appellant] was terminated from [BTC], a court-ordered placement for failure to progress in treatment."[4]

A contested probation violation hearing was held on September 20, 2010. Appellant's probation officer was the sole witness at that hearing, and her testimony was the only evidence received. She testified she knew appellant had been placed at BTC on November 21, 2008. On April 12, 2010, the probation officer went to BTC to arrest appellant for violating probation for "failing to progress." Over defense counsel's hearsay and lack of foundation objections, the probation officer further stated that appellant's "treatment providers explained to [her] that he is failing to progress in treatment" and an employee of BTC had told the probation officer that appellant was "not using the interventions or the therapy to his advantage . . . ." Again over defense

---

[4] At the subsequent probation revocation hearing, due to hearsay concerns, and at the prosecutor's request, the court struck from the section 777 notice the additional allegation that appellant was terminated from BTC for "failure to follow program rules by sexually acting out with other residents."

3

counsel's hearsay and lack of foundation objections, the probation officer testified that she was familiar with the phases of treatment offered at BTC, and she testified about her understanding of appellant's performance in treatment.

The juvenile court sustained the violation of probation because appellant was not progressing in treatment at an appropriate pace. The court ordered that appellant continue to be detained pending the dispositional hearing. The court's minute order from the September 20, 2010 probation violation hearing notes that the court sustained the probation violation alleged in the probation department's April 19 section 777 notice.

At the April 4, 2011 dispositional hearing, the court found by clear and convincing evidence that appellant failed to reform while placed in residential treatment programs and imposed a DJF commitment. Appellant then appealed from the April 4, 2011 commitment order. That appeal was docketed in this court as No. A132129.

### *In re C.H.*

During the pendency of the appeal in *Alexander L. I,* the California Supreme Court decided *In re C.H.* (2011) 53 Cal.4th 94, which held that "a juvenile court lacks authority to commit a ward to the DJF under section 731[, subdivision] (a)(4) [(section 731(a)(4))] if that ward has never been adjudged to have committed an offense described in section 707(b), even if his or her most recent offense alleged in a petition and admitted or found true by the juvenile court is a sex offense set forth in Penal Code section 290.008(c) as referenced in section 733[, subdivision] (c) [(section 733(c))]." (*In re C.H.,* at pp. 97-98.) The high court went on to explain that "the class of wards who may be committed to the DJF [are] those wards who (1) have committed an offense described in section 707(b) and (2) whose most recent offense alleged in any petition and admitted or found to be true by the court is listed either in section 707(b) or Penal Code section 290.008(c)." (*In re C.H.,* at p. 102.)

### *Assembly Bill No. 324*

After the decision in *In re C.H.,* the Legislature enacted Assembly Bill No. 324 (2011-2012 Reg. Sess.) (Stats. 2012, ch. 7, eff. Feb. 29, 2012; hereafter Assembly Bill No. 324). "[T]he intent of the Legislature in enacting this act [was] to address the

4

California Supreme Court's ruling in *In re C.H.*[*, supra,*] 53 Cal.4th 94." (Stats. 2012, ch. 7, § 3, codified at section 1752.16, subd. (b), italics added.) Assembly Bill No. 324 "expand[ed] the class of persons who may be committed to the [DJF] to include a ward who has committed a specified sex offense, or who was previously found to have committed a specified serious or violent offense or a specified sex offense." (Legis. Counsel's Dig., Assem. Bill No. 324 (2011-2012 Reg. Sess.).) The Legislature deemed the bill "an urgency statute" and explained that "[i]n order to protect the public by preventing the possible release of juvenile offenders who committed serious or violent offenses or sex offenses, it is necessary that this act take effect immediately." (Stats. 2012, ch. 7, § 4.)

Assembly Bill No. 324 amended sections 731(a)(4) and 733(c). (See Stats. 2012, ch. 7, §§ 1, 2.) Subdivision (a) of section 731 authorizes the juvenile court to order specified types of treatment and to make orders and commitments for juveniles who are adjudged wards of the court. (§ 731(a)(1)-(4); *In re C.H., supra,* 53 Cal.4th at p. 100.) The legislation amended section 731(a)(4) to permit the juvenile court to "[c]ommit the ward to the [DJF] if the ward has committed an offense described in subdivision (b) of Section 707 or subdivision (c) of Section 290.008 of the Penal Code, and is not otherwise ineligible for commitment to the division under Section 733." (Stats. 2012, ch. 7, § 1 [additions underscored].) Assembly Bill No. 324 also amended section 733(c) as follows: "The ward has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707, unless the offense is a sex offense set forth in or subdivision (c) of Section 290.008 of the Penal Code. This subdivision shall be effective on and after September 1, 2007." (Compare Stats. 2008, ch. 699, § 28, p. 4863 with Stats. 2012, ch. 7, § 2 [deletions in strikethrough, additions underscored].)

The legislation also added section 1752.16 to the Welfare and Institutions Code: "(a) The Chief of [DJF], with approval of the Director of Finance, may enter into contracts with any county of this state for [DJF] to furnish housing to a ward who was in

5

the custody of [DJF] on December 12, 2011, and whose commitment was recalled based on both of the following: [¶] (1) The ward was committed to [DJF] for the commission of an offense described in subdivision (c) of Section 290.008 of the Penal Code. [¶] (2) The ward has not been adjudged a ward of the court pursuant to Section 602 for commission of an offense described in subdivision (b) of Section 707. [¶] (b) It is the intent of the Legislature in enacting this act to address the California Supreme Court's ruling in *In re C.H.*[*, supra,*] 53 Cal.4th 94." (Stats. 2012, ch. 7, § 3, italics added.)[5]

### *Recall of DJF Commitment and Recommitment*

On March 6, 2012, the juvenile court ordered the parties to submit briefs on *In re C.H.* and Assembly Bill No. 324. On March 22, 2012, appellant's trial counsel filed a motion to recall the DJF commitment. Counsel argued that appellant had never been found guilty of an offense described in section 707(b), and thus the juvenile court did not have the authority to commit him to the DJF. The People responded by conceding that appellant's commitment to DJF would have to be vacated. The deputy district attorney opined that "it may be necessary to set the matter for a recall disposition per . . . section 731.1 in order to make a dispositional order that is appropriate under all the circumstances of the case." He suggested, however, that the court could commit appellant to DJF under the new section 1752.16.

The probation department prepared a report, which noted that appellant had been committed to DJF on April 4, 2011, as a consequence of a sustained notice of violation under section 777. In light of the decision in *In re C.H.,* the department recommended that (1) wardship be continued, (2) the April 4, 2011 commitment be set aside, and (3) appellant be "temporarily housed at DJF, pursuant to [section] 1752.16, for the purposes of participation in DJF's Sexual Behavior Treatment Program." The department also recommended imposition of a number of probation conditions.

---

**5**   Section 1752.16 was subsequently amended, but that amendment is not relevant to the issues raised in this case. (See Stats. 2012, ch. 41, § 99.)

The juvenile court held a hearing on the matter on April 9, 2012. After argument from counsel, the court announced it would follow the probation department's recommendations. It continued appellant's wardship but set aside its earlier commitment order in response to *In re C.H.* It ruled that "the most appropriate program . . . in terms of placement, is the program that they have available at the DJF that the county will have to contract for to obtain. . . . [¶] So I'm going to order that [appellant] be temporarily housed and given access to the DJF sex behavior treatment program pursuant to . . . section 1752.16, and he can be returned to the county when he satisfactorily completes that program." The court adopted the probation department's recommendations, including its proposed probation conditions. A handwritten notation on the court's order requests that appellant be transported "back to [DJF]."

On April 13, 2012, appellant filed a notice of appeal from the April 9, 2012 order. That appeal was docketed in this court as No. A135213.

*Alexander L. I*

On June 14, 2012, we issued our opinion in No. A132129, appellant's appeal from the juvenile court's April 4, 2011 dispositional order. We reversed the juvenile court because "[w]e conclude[d] that the court's finding that appellant violated his probation was based solely on inadmissible hearsay evidence . . . ." Since the hearsay testimony at issue was the sole evidence on which the juvenile court based its finding that appellant had violated his probation, we held that the error in its admission was not harmless beyond a reasonable doubt, reversed the order, and remanded for a new section 777 hearing.

*The Renewed Probation Violation Hearing and Disposition*

On October 9 and November 15, 2012, while the appeal in No. A135213 was pending, the juvenile court held a new probation violation hearing on the basis of the April 2010 notice of violation. Once again, the basis of the violation was appellant's alleged failure to progress in treatment. At the conclusion of the hearing, the juvenile court found appellant had failed to progress in treatment, and it sustained the probation violation.

7

The appeal in No. A135213 was still pending on February 15, 2013, when the juvenile court held a contested disposition hearing.  The juvenile court again ordered appellant temporarily housed at DJF pursuant to section 1752.16, imposed probation conditions, and ordered that he participate in a sex offender treatment program.  The court relieved appellant of any sex offender registration requirement previously imposed.

Appellant filed a notice of appeal from the February 15, 2013 disposition order on February 27, 2013.  That appeal was docketed as No. A138050.

*Alexander L. II*

We held oral argument in No. A135213 on April 18, 2013.  On May 1, 2013, we filed our opinion in that case.[6]  We reversed the April 9, 2012 dispositional order because it was based on the same probation violation finding we had reversed in *Alexander L. I*. (*Alexander L. II,* at pp. 2, 9.)  We summarized our holding as follows:  "Because we previously concluded [in *Alexander L. I*] that there was insufficient evidence to support the juvenile court's determination that appellant violated his probation, it necessarily follows that he cannot be recommitted based on that determination."  (*Alexander L. II,* at p. 2.)  We remanded the matter to the juvenile court with directions that it recalculate appellant's custody credits and modify certain probation conditions.  (*Id*. at p. 12.)

Prior to oral argument, the parties had informed us that the juvenile court had conducted a dispositional hearing on February 15.  (*Alexander L. II,* at p. 11, fn. 9.)  We noted, however, that the February 15 dispositional order was the subject of a separate appeal in which the record was not yet complete, and we therefore expressed no view on the merits of that order.  (*Ibid*.)

*The Current Appeal*

On May 7, 2013, before the parties filed briefs in this appeal, we issued an order directing them to address the following question:  "Did the superior court have jurisdiction to enter the dispositional order that is the subject of the above-captioned

---

[6] On May 30, we granted a request for modification of the opinion.  We refer herein to the opinion as modified.

8

appeal while the appeal in No. A135213 was pending? (See *Agnew v. Superior Court* (1953) 118 Cal.App.2d 230, 234.) If so, what is the legal basis of that jurisdiction?"

DISCUSSION

Appellant raises a number of claims in his opening brief, including various challenges to the applicability and constitutionality of section 1752.16. With one exception, we will not reach most of these claims, because we conclude the jurisdictional issue identified in our May 7, 2013 briefing order is dispositive.

I.  *The Renewed Probation Revocation Hearing Was Not Barred by Collateral Estoppel.*

Before proceeding to the question of jurisdiction, we must address a preliminary argument. Appellant contends the probation violation hearing at issue here should not have occurred in the first instance because it was barred by the doctrine of collateral estoppel. As support, he cites *People v. Quarterman* (2012) 202 Cal.App.4th 1280 (*Quarterman*), an opinion issued by Division One of this appellate district. *Quarterman* is distinguishable, however, because in that case at the first probation revocation hearing one trial judge found there was insufficient evidence to sustain the notice of probation violation issued to the defendant. (*Id*. at p. 1287.) The district attorney later filed a materially identical request for revocation of probation, which was heard by a different judge. The second judge denied the defendant's motion to dismiss the probation revocation proceedings on grounds of collateral estoppel. At the second hearing, the prosecution presented additional witnesses, thereby correcting the evidentiary deficiencies that had led the first judge to deny the first request for revocation. (*Ibid*.)

The Court of Appeal reversed. (*Quarterman, supra,* 202 Cal.App.4th at pp. 1285, 1299.) It explained that "[c]ollateral estoppel will bar relitigation of an issue decided at a previous proceeding if (1) the issue decided at the previous proceeding is *identical* to the one which is sought to be relitigated; (2) the issue decided in the previous proceeding was *actually litigated;* (3) the issue sought to be relitigated was *necessarily decided;* (4) the decision in the previous proceeding is *final and on the merits;* and (5) the party against whom preclusion is sought is *the same as, or in privity with,* the party to the previous

9

proceeding." (*Id.* at p. 1288.) It then held that all of the elements of collateral estoppel were satisfied, and thus the prosecution could not initiate a second probation violation proceeding on the same ground after failing to sustain its burden at the first, fully litigated probation revocation hearing. (*Id.* at pp. 1285, 1291, 1298.)

But the *Quarterman* court specifically noted that the trial judge's decision after the first probation revocation hearing "was final and on the merits" because the prosecution had elected not to appeal that decision. (*Id.* at p. 1290.) Here, however, the requisite finality is lacking, since unlike the prosecution in *Quarterman,* appellant *did* appeal from the earlier decision revoking his probation, and this court reversed that order in *Alexander L. I.* (See *In re Jorge G.* (2004) 117 Cal.App.4th 931, 947 [collateral estoppel does not bar retrial of prior juvenile adjudication allegation after reversal for insufficient evidence]; *Grain Dealers Mutual Ins. Co. v. Marino* (1988) 200 Cal.App.3d 1083, 1088-1089 [where judgment in prior criminal action had been set aside in federal habeas proceeding, it could no longer support application of collateral estoppel].) Indeed, *Quarterman* states that where a *defendant* has successfully appealed from an adverse probation revocation ruling and a new hearing results, "the defendant has asked for it; it has not been forced on the defendant." (*Quarterman, supra,* 202 Cal.App.4th at p. 1293.) That is precisely the case here, and thus collateral estoppel does not apply.

II.      *The Juvenile Court Lacked Jurisdiction to Conduct a Dispositional Hearing During the Pendency of the Appeal in Alexander L. II.*

The parties take opposing positions on whether the juvenile court had subject matter jurisdiction to issue the February 15, 2013 dispositional order while the appeal in *Alexander L. II* was pending. Appellant argues the juvenile court lacked jurisdiction. The People contend the juvenile court had jurisdiction despite the pendency of the appeal, because the lower court was correcting an unauthorized sentence. We will analyze these contentions after we summarize the relevant law.

A.      *Governing Law*

"As a general matter, '[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal and issuance of the

10

remittitur.' [Citation.] By the same token, the notice of appeal divests the trial court of subject matter jurisdiction. [Citations.] 'Because an appeal divests the trial court of subject matter jurisdiction, the court lacks jurisdiction to vacate the judgment or make any order affecting it. [Citations.] Thus, action by the trial court while an appeal is pending is null and void. [Citations.] Indeed, "[s]o complete is this loss of jurisdiction effected by the appeal that even the consent of the parties has been held ineffective to reinvest the trial court with jurisdiction over the subject matter of the appeal and that an order based upon such consent would be a nullity." [Citation.]' (*People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472-1473 [(*Alanis*)]"

" 'The purpose of the rule depriving the trial court of jurisdiction pending appeal " ' "is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment . . . by conducting other proceedings that may affect it.' [Citation.]"' [Citation.]"

"There are, however, exceptions to the general rule. The trial court retains jurisdiction . . . to correct an unauthorized sentence [citation]." (*People v. Nelms* (2008) 165 Cal.App.4th 1465, 1471-1472 (*Nelms*).)

B. *The Appeal in Alexander L. II Divested the Juvenile Court of Subject Matter Jurisdiction, and its February 15, 2013 Dispositional Order Does Not Fall Within the Exception for Correction of an Unauthorized Sentence.*

The People acknowledge the general rule that the filing of an appeal divests the juvenile court of jurisdiction until determination of the appeal and issuance of the remittitur. Nevertheless, they argue this case falls within the exception that permits a court to correct an unauthorized sentence. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 1044 ["an unauthorized sentence is subject to correction despite the circumstance that an appeal is pending"].) They assert that an unauthorized sentence is one that is "in excess of jurisdiction." (*In re Sheena K.* (2007) 40 Cal.4th 875, 887 (*Sheena K.*).) According to the People, the April 9, 2012 dispositional order committing appellant to DJF was unauthorized because it "was based on a probation violation reversed in

11

[*Alexander*] *L. II*[.]"**7**  As a consequence, the April 9, 2012 commitment "was an unauthorized sentence subject to correction despite the circumstance that a new appeal [No. 138050] was pending."  We cannot agree.

The exception for correction of an unauthorized sentence is more limited than the People suggest.  "A sentence is said to be unauthorized if it cannot 'lawfully be imposed *under any circumstance* in the particular case[.]'"**8**  (*Sheena K., supra,* 40 Cal.4th at p. 887, italics added.)  The trial court's authority to correct a truly unauthorized sentence stems from its power to vacate a void judgment. (See *People v. Chagolla* (1983) 144 Cal.App.3d 422, 434.)  But " '[a] judgment is void rather than voidable *only* if the trial court lacked subject matter jurisdiction.'  [Citation.]"  (*Alanis, supra,* 158 Cal.App.4th at p. 1473.)  Where, as here, the trial court "had subject matter jurisdiction over [appellant's] criminal prosecution, . . . the . . . judgment was not void on its face."  (*Ibid*.) The April 9, 2012 dispositional order therefore was not an unauthorized sentence (a void judgment) that the juvenile court could correct despite the pendency of an appeal.

*Alanis, supra,* 158 Cal.App.4th 1467, is illustrative.  In that case, the defendant accepted a plea agreement, one term of which was that he would be allowed to challenge the denial of his preplea discovery motions on appeal.  (*Id*. at p. 1471.)  The trial court accepted the defendant's plea and entered judgment in accordance with it, issuing a certificate of probable cause permitting the defendant to challenge the denial of his

_____

**7** We note that the juvenile court's February 15, 2013 disposition order could not have been correcting an unauthorized sentence because of the reversal in *Alexander L. II*.  Our opinion in that case was not issued until May 1, 2013, some two and a half months *after* the juvenile court entered the dispositional order that is the subject of this appeal.  At the October 9, 2012 hearing initiating the proceedings leading to the present appeal, the juvenile court stated the case before it was "on remittitur," which we assume was a reference to our August 15, 2012 remittitur in *Alexander L. I*.

**8** Although the cases dealing with the terms " 'unauthorized sentence' " and sentence in " 'excess of jurisdiction' " do not make the meaning of those terms crystal clear, they "generally involve pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." (*People v. Welch* (1993) 5 Cal.4th 228, 235.)  Obviously, that is not the case here, since our prior reversals in these cases were based on appellant's successful claim that the juvenile court's finding of probation violation was unsupported by substantial evidence.

12

discovery motions. Defendant then filed an appeal from that judgment. Some time later, the parties discovered that, contrary to the terms of the plea bargain, the defendant's discovery claims might not be cognizable on appeal. (*Ibid*.) With the prosecutor's agreement, the trial court then recalled the sentence to permit the defendant to withdraw his guilty plea and agree to a court trial. (*Id*. at p. 1472.) The court tried the defendant, found him guilty, reimposed the same sentence, and entered a new judgment. The defendant filed an appeal from the new judgment, and then later formally abandoned his appeal from the initial judgment. (*Ibid*.)

The Court of Appeal held that all of the trial court's actions subsequent to the defendant's filing of his first notice of appeal "were nullities and void." (*Alanis, supra,* 158 Cal.App.4th at p. 1473.) Furthermore, it held that the trial court's actions did not fall within any exception to the general rule that the filing of a valid notice of appeal divests the trial court of subject matter jurisdiction. (*Id*. at pp. 1473-1476.) Since the trial court had subject matter jurisdiction over the defendant's criminal prosecution, its first judgment was not void, and the exception for correction of an unauthorized sentence was inapplicable. (See *id*. at p. 1473.)

As was the case in *Alanis,* the February 15, 2013 dispositional order now before us cannot be viewed as the correction of an unauthorized sentence. That dispositional order, which returned appellant to DJF, was issued while the previous commitment (under the April 9, 2012 dispositional order) was on appeal to this court. The question therefore becomes, was the commitment under the April 9, 2012 dispositional order—the order allegedly subject to correction—unauthorized in the sense that "it [could not] 'lawfully be imposed under any circumstance in the particular case[?]' " (*Sheena K., supra,* 40 Cal.4th at p. 887.) The answer is no.[9]

---

[9] The People mistakenly rely on a footnote in our opinion in *Alexander L. II* to support their argument that the juvenile court's February 15, 2013 dispositional order corrected an unauthorized sentence. (See *Alexander L. II,* at p. 7, fn. 6.) In that footnote, we concluded the juvenile court had jurisdiction to recall appellant's April 4, 2011 commitment and enter the April 9, 2012 dispositional order despite the pendency of the appeal in *Alexander L. I*. (*Ibid*.) But our conclusion was based on the California

The juvenile court indisputably has subject matter jurisdiction over appellant's wardship proceeding, and its authority to revoke a ward's probation for violations cannot be questioned. (See §§ 602, subd. (a), 607, 777.) The April 9, 2012 dispositional order did not, therefore, impose an "unauthorized sentence" in the sense relevant here. We reversed that dispositional order because we concluded it was unsupported by substantial evidence. (*Alexander L. II,* at pp. 9-10.) Our holding that substantial evidence was lacking was not a declaration that the commitment could not lawfully be imposed under *any* circumstance in appellant's case (*Sheena K., supra,* 40 Cal.4th at p. 887), but rather that it could not be imposed on the basis of "the particular sentencing record developed in the trial court." (*People v. Welch, supra,* 5 Cal.4th at p. 235.) Thus, the juvenile court's April 9, 2012 dispositional order was not a void judgment subject to correction despite the pendency of an appeal. That order "was only voidable and not void. Consequently, the court lost jurisdiction over its own judgment after the notice of appeal was filed and it was pending in our court." (*People v. Malveaux, supra,* 50 Cal.App.4th at p. 1434; accord, *People v. Getty* (1975) 50 Cal.App.3d 101, 107 [superior court was without jurisdiction to recall and modify juvenile ward's commitment order during pendency of appeal from order committing ward to California Youth Authority]; *Agnew v. Superior Court, supra,* 118 Cal.App.2d at p. 234 [juvenile court had no jurisdiction to enforce order transferring case to municipal court where appeal had been taken from that order].)

C.    *The Statutes Upon Which the People Rely Did Not Authorize the Juvenile Court to Act During the Pendency of the Appeal in Alexander L. II.*

We turn next to the provisions of the Welfare and Institutions Code the People contend grant the juvenile court jurisdiction to act during the pendency of an appeal. They cite a number of statutes that allegedly permit the juvenile court to take action on a dispositional order even while an appeal of that order is pending. We are constrained to

_____

Supreme Court's holding in *In re C.H., supra,* 53 Cal.4th 94, which held that DJF commitments were *statutorily unauthorized* for wards who had never committed an offense described in section 707(b). (*Id*. at pp. 97-98, 108.) Put another way, *In re C.H.* held that a DJF commitment could not lawfully be imposed under any circumstances in such cases. (*Sheena K., supra,* 40 Cal.4th at p. 887.)

14

reject these arguments, because the record shows the juvenile court did not purport to act under any of these statutes, and they are inapplicable by their terms to appellant's case.

The People contend the "correction and modification" of appellant's commitment was authorized by section 731.1, subdivision (a).[10]  That statute, however, contemplates a process initiated by the chief probation officer's recommendation that the juvenile court recall the commitment of a ward whose commitment offense was not a section 707(b) offense.  (*In re Carl N.* (2008) 160 Cal.App.4th 423, 438.)  It is this recommendation that triggers the juvenile court's discretion under section 731.1, subdivision (a), but the People "offer[] no evidence of any such recommendation in his case."  (*In re Brandon G.* (2008) 160 Cal.App.4th 1076, 1081.)  Without this recommendation, appellant's commitment could not be recalled under this section.  (*Ibid*.)

Section 778, upon which the People also rely, is likewise inapposite.[11]  In this case, our review of the record discloses no verified petition by any parent or other interested person seeking "a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."  (§ 778.)  We therefore fail to understand how this section can be said to apply here.

---

[10] That statute provides in relevant part:  "Notwithstanding any other law, the court committing a ward to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities, upon the recommendation of the chief probation officer of the county, may recall that commitment in the case of any ward confined in an institution operated by the division.  Upon recall of the ward, the court shall set and convene a recall disposition hearing for the purpose of ordering an alternative disposition for the ward that is appropriate under all of the circumstances prevailing in the case. . . ."  (§ 731.1, subd. (a).)

[11] Section 778 provides in relevant part:  "Any parent or other person having an interest in a child who is a ward of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a ward of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court.  The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction."

15

Equally inapplicable is section 782, under which the juvenile court "may dismiss the petition or may set aside the findings and dismiss the petition if the court finds that the interests of justice and the welfare of the minor require such dismissal, or if it finds that the minor is not in need of treatment or rehabilitation." This statute authorizes the juvenile court to "set aside the jurisdictional findings and dismiss the petition if it finds that the interests of justice and the welfare of the minor require a dismissal, or if it finds that the minor is not in need of treatment or rehabilitation." (*In re Greg F.* (2012) 55 Cal.4th 393, 404.) Here, the juvenile court neither dismissed the petition nor found that appellant was not in need of treatment or rehabilitation. Indeed, it found precisely the opposite.

D.     *Remedy*

Having concluded the juvenile court lacked subject matter jurisdiction to enter the February 15, 2013 dispositional order, the only question remaining is the proper disposition of this appeal. Although that order is void for lack of subject matter jurisdiction, we may properly exercise jurisdiction over appellant's appeal from it. (*Alanis, supra,* 158 Cal.App.4th at pp. 1476-1477 [appeal lies from void judgment and Court of Appeal has jurisdiction to decide it].) Where an appeal is taken from a void judgment, "the proper procedure is to reverse the void judgment rather than dismiss the appeal." (*Id.* at p. 1477, fn. omitted.)

Because the juvenile court had no jurisdiction to enter the February 15, 2013 order, "the matter before us remains as it was when [appellant] filed his notice of appeal." (*Nelms, supra,* 165 Cal.App.4th at p. 1473.) The result is that appellant returns to the status of a probationer against whom no probation violation has properly been proved. As a result, "no penalty—be it commitment to DJF or anything else—[can] be imposed on him until the People present[] sufficient evidence to the juvenile court that a violation [has] occurred and the court [makes] the required findings." (*Alexander L. II,* at p. 9.)

Moreover, since we have concluded the order from which this appeal is taken is void, we do not reach appellant's other challenges to the order, including the arguments related to section 1752.16. (See *Alanis, supra,* 158 Cal.App.4th at pp. 1477-1478.) A

16

"void judgment calls for a single action: reversal. Accordingly, we decline [appellant's] invitation to address the merits of his appellate claims." (*Id*. at p. 1479.) Like the court in *Alanis,* we recognize "that reversing the void judgment may result in the expenditure of additional time and resources by appointed counsel, the district attorney, and the superior court and perhaps the Attorney General and this court.[12] However, despite our strong interest in judicial economy, we do not believe that such a purely practical interest legally justifies the circumvention of the procedures for properly preserving and presenting an issue for appellate review or authorizes us to entertain appellate claims made in an appeal from a void judgment." (*Id*. at p. 1478.)

DISPOSITION

The February 15, 2013 dispositional order is reversed and the matter is remanded for such other proceedings as are authorized by law.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

_____

**12** Nothing in our opinion should be understood as *requiring* further proceedings on remand. Such proceedings will occur only "in the event the People elect to pursue the probation violation following remand." (*Alexander L. I,* at p. 11.)

17