Filed 12/14/15  In re Keyon G. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re KEYON G., a Person Coming Under the Juvenile Court Law. | B259369 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>KEYON G.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. JJ20060) |

APPEAL from an order of the Superior Court of Los Angeles County, Catherine J. Pratt, Juvenile Court Referee.  Affirmed in part, reversed in part, and remanded with directions.

Erick Victor Munoz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II and Dana M. Ali, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

The juvenile court found true allegations that Keyon G. unlawfully possessed a loaded firearm and live ammunition. Keyon argues that the court erroneously admitted testimony by a sheriff's deputy that the ammunition was "live," and that without this inadmissible testimony the evidence was insufficient to support the finding that Keyon possessed live ammunition. We reverse the true finding on that allegation.

# FACTUAL AND PROCEDURAL BACKGROUND

On September 13, 2014, at approximately 9:50 p.m., Los Angeles County Sheriff's Sergeant Bryan Haynes positioned his patrol car behind a white car to initiate a traffic stop. When Sergeant Haynes illuminated his overhead lights, a passenger threw a firearm out of the window as the car continued moving. The gun landed on the sidewalk. Sergeant Haynes conducted a traffic stop and arrested the driver of the car and Keyon, the sole passenger. Los Angeles County Sheriff's Deputy Leonard Garcia arrived and retrieved the firearm.

The People filed a petition pursuant to Welfare and Institutions Code section 602 alleging that Keyon had committed the offenses of carrying a loaded and unregistered handgun (Pen. Code, § 25850, subd. (a)), possession of a firearm by a minor (Pen. Code, § 29610), and possession of live ammunition by a minor (Pen. Code, § 29650). Keyon denied the allegations.

At the hearing on the petition, Deputy Garcia testified that when he arrived at the scene he saw a crowd of people standing near the gun on the sidewalk. The prosecutor asked Deputy Garcia, "Did you recover that gun?" Deputy Garcia answered, "Correct. I recovered it, I inspected it, saw that the weapon was fully operational and loaded with live rounds in the magazine and one in the chamber." Counsel for Keyon objected to this statement on the ground that it lacked foundation (although she did not move to strike the testimony). The court overruled the objection. Deputy Garcia testified the gun was a

2

black semiautomatic handgun.  The prosecutor introduced evidence that someone had reported the gun had been stolen.

The juvenile court found the allegations true.  The court declared the two firearm possession offenses felonies and the live ammunition possession offense a misdemeanor. At the disposition hearing, the court ordered Keyon to remain a ward of the court and directed him into a mid-term camp community placement program.  The court determined that the maximum term of confinement was three years 10 months.  Keyon G. appeals, challenging only the true finding on the allegation of possession of live ammunition.

## DISCUSSION

Penal Code section 29650 provides:  "A minor shall not possess live ammunition." To establish a violation of this statute, the People must prove beyond a reasonable doubt that the ammunition in the minor's possession was "live."  Ammunition is "live" if it is "charged with explosives and containing shot or a bullet."  (Merriam-Webster's New International Dict. (3d ed. 1981) p. 1324.)  "'[L]ive ammunition'" is defined as "any material (i.e., projectiles, shells, or bullets) in the present state of being capable of being fired or detonated from a pistol, revolver or any firearm."  (*In re Khamphouy S.* (1993) 12 Cal.App.4th 1130, 1134 (*Khamphouy S.*)

Keyon argues that the juvenile court committed reversible error by allowing, over Keyon's objection, Deputy Garcia to give his opinion that the gun contained live rounds of ammunition.  Keyon contends that, because the prosecution did not introduce evidence Deputy Garcia had the requisite knowledge, experience, and training to qualify as an expert on identifying live ammunition, Deputy Garcia's testimony that the ammunition was live was inadmissible.  Without this testimony, Keyon maintains, there is no substantial evidence that he possessed live ammunition.

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to

3

which his testimony relates." (Evid. Code, § 720, subd. (a); see *People v. Rodriguez* (2014) 58 Cal.4th 587, 638.) "'Under Evidence Code section 801, expert opinion testimony is admissible only if the subject matter of the testimony is "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact."' [Citation.]" (*People v. Gonzalez* (2006) 38 Cal.4th 932, 944; see *People v. Spence* (2012) 212 Cal.App.4th 478, 507.) "We review the trial court's evidentiary rulings for abuse of discretion." (*People v. Bryant* (2014) 60 Cal.4th 335, 405.)

Whether ammunition is live is a subject that is beyond common experience and may be proven by the opinion testimony of a law enforcement officer. In *In re Brandon G.* (2008) 160 Cal.App.4th 1076, 1078 (*Brandon G.*), the police arrested a minor who had a loaded shotgun in his possession. "After establishing that he had training and experience in the handling and recognition of guns and ammunition" acquired during his five years in law enforcement, the officer who recovered the shotgun identified the shell as "a 9-pellet 00-size shot shell" and gave his opinion that the "shell was live ammunition." (*Id.* at pp. 1079-1080.) The court held that "the officer gave opinion testimony, which constituted direct testimony that the round was live." (*Id.* at p. 1080.)

Although Deputy Garcia stated his opinion that the gun he recovered had live ammunition, the trial court should have sustained Keyon's foundation objection. The prosecutor never demonstrated Deputy Garcia's personal knowledge of the viability of the ammunition recovered from the gun Keyon possessed. Although Deputy Garcia testified that he inspected the gun, he never described the caliber or cartridge of the ammunition or how he determined the rounds inside the gun were live, as opposed to duds or blank cartridges.[1] Moreover, apart from establishing that Deputy Garcia was a

---

[1] A dud is "an explosive-filled missile that fails to explode when it should." (Merriam-Webster's New International Dict. (3d ed. 1981) p. 1324.) A blank cartridge contains "'a special propellant powder, but no bullet.'" (*State v. Hazard* (2013) 68 A.3d 479, 502.) The officer in *Brandon G.* testified that he "could tell whether a shot shell had pellets in it by 'listening to it,'" and that he had "encountered misfires when ammunition

4

sheriff's deputy assigned to patrol, the prosecutor never asked Deputy Garcia to describe his training and experience in identifying firearms and live ammunition. (Cf. *Brandon G.*, *supra*, 160 Cal.App.4th at p. 1079.) Contrary to the People's assertion, the fact that Deputy Garcia was a law enforcement officer testifying about law enforcement-related activities did not, without more, make his opinion about live ammunition admissible. Most law enforcement officers who routinely handle firearms probably become experts at recognizing live ammunition. But that does not make their opinions admissible at trial without a proper foundation that they have such expertise. The juvenile court abused its discretion in overruling Keyon's foundation objection.

Evidentiary rulings are subject to harmless error review under the standard in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 120; see *People v. Page* (2008) 44 Cal.4th 1, 42.) Thus, the erroneous admission of Deputy Garcia's opinion testimony is harmless if there is no reasonable probability that Keyon would have obtained a more favorable result if the juvenile court had excluded Deputy Garcia's testimony that the ammunition in the gun was live. (See *People v. Clark* (2011) 52 Cal.4th 856, 924.) This, in turn, depends on whether there is substantial circumstantial evidence in the record, other than Deputy Garcia's inadmissible opinion, that the ammunition was live.

In *Khamphouy S., supra,* 12 Cal.App.4th 1130 the court found sufficient evidence that the minor possessed live ammunition, despite the fact that the officers did not give an opinion that the ammunition in the minor's handguns was live and in the absence of any direct evidence that the ammunition was live. (*Id.* at p. 1135.) The court affirmed the true finding because "[t]here was substantial circumstantial evidence the ammunition in [the minor's] pockets was live ammunition." (*Ibid.*) The minor had in his pockets numerous rounds of the same caliber as the bullets in one of the two guns recovered by the police. The actions of the officers showed that they were "dealing with the situation

---

failed to fire," and thus had personal knowledge of how to distinguish between live and "dud" ammunition. (*Brandon G.*, *supra*, 160 Cal.App.4th at p. 1079.)

as a matter of utmost gravity," they "unload[ed] the guns to make them 'safe,'" and they "carefully collect[ed], separat[ed], and describ[ed] the types of ammunition found." (*Ibid.*) Moreover, at the hearing the juvenile court physically inspected the ammunition and stated, "It looks live to me." (*Id.* at p. 1135 & fn. 3.)

In contrast, in *In re Arcenio V.* (2006) 141 Cal.App.4th 613, "[t]here was no opinion testimony by [the officer] that the rounds were live," and the court found that the evidence was not sufficient to support the finding that the minor possessed live ammunition. (*Id.* at p. 617.) The juvenile court "did not inspect the rounds as was the case in *Khamphouy S.*," and "[n]o effort was made to test-fire the handgun or any of the bullets." (*Ibid.*) The court noted that "the only testimony was that bullets were in the handgun and they were removed for booking purposes. There was no testimony that removal of the rounds was necessary for safety purposes as was the case in *Khamphouy S.*" (*Ibid.*) To the contrary, the evidence was that the officers removed the ammunition from the gun not for safety but "for booking purposes." (*Ibid.*) The court concluded that there was no substantial evidence to support a finding that the ammunition was live. (*Ibid.*)

This case is closer to *Arcenio V.* than *Khamphouy S.* Sergeant Haynes initiated a traffic stop, and the passenger, Keyon, tossed a handgun out the car window while the car was moving. Deputy Garcia arrived at the scene to retrieve the gun. He inspected the weapon and discovered it was operational, loaded with ammunition, and had a round in the chamber. Deputy Garcia did not testify that he removed the ammunition from the gun, inspected it, or secured it and the gun for officer safety.[2] There is no evidence of an attempt to test the ammunition or the gun, and the juvenile court did not examine the ammunition. Indeed, the prosecutor did not present any evidence of the ammunition,

---

[2]     The People argue that Sergeant Haynes' "concern for public safety" supported the juvenile court's "finding that the ammunition was live." Sergeant Haynes testified that "a gun . . . tossed in front of a residence" posed "a danger to public safety," not that he observed or took any action reflecting danger posed by live ammunition.

physical or photographic. Therefore, there is no substantial evidence to support the finding that the ammunition in Keyon's possession was live.[3]

## DISPOSITION

The part of the order finding that Keyon violated Penal Code section 29650, possession of live ammunition by a minor, a misdemeanor, is reversed, and the matter remanded for the juvenile court to recalculate the maximum term of confinement. In all other respects the disposition order is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.

ZELON, J.

---

[3]    Penal Code section 16840, subdivision (b)(1), provides that, as used in Penal Code section 15850, "[a] firearm shall be deemed to be 'loaded' when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm." Keyon G. does not argue that there is no substantial evidence to support the juvenile court's finding that Keyon G. committed the offense of carrying a loaded firearm.

7